## VOGT BROS. MFG. CO. v. SLOSS–SHEFFIELD STEEL & IRON CO.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1924. On Rehearing, April 8, 1924.)

### No. 3948.

1. **Sales ⬄69—Contract held one of sale and not for manufacture of pig iron.**

A contract for the sale of pig iron by a manufacturing vendor, fixing the chemical analysis and reciting that seller should not be responsible for strikes, difficulties with workers, accidents at works, etc., *held* not for manufacture, but for sale, under which seller had the right to buy from other manufacturers.

2. **Sales ⬄87(3)—Evidence held sufficient to sustain finding contract was for sale and not for manufacture.**

In seller's action for buyer's refusal to accept pig iron, evidence *held* sufficient to sustain a finding that contract was one of sale, and not of manufacture.

3. **Appeal and error ⬄997(3)—On joint request for instructed verdict finding of fact sustained, if any evidence to support it.**

On the joint request for an instructed verdict, any finding of fact inherent in the result reached must be sustained, if there is any evidence to support it.

4. **Sales ⬄177—Buyer must clearly show intention to repudiate contract.**

A buyer, who without any legal excuse intends definitely to repudiate a contract, must make that intention clear beyond doubt or confusion.

5. **Sales ⬄177—Correspondence held not to effect cancellation of contract.**

Correspondence relating to the cancellation of a contract for the sale of pig iron in six monthly installments, to be treated as a separate contract for each month, in which buyer tried to persuade seller to consent to annulment and to agree on damages if seller would agree to cancellation, and seller tried to persuade buyer not to insist on annulment, *held* not definitely to repudiate the contract until buyer absolutely refused to accept delivery.

6. **Sales ⬄384(2)—Buyer's refusal to accept installments held breaches of contract as of such dates, and not as of buyer's repudiation of whole contract.**

On the failure of negotiations for the cancellation of the whole contract for sale of pig iron in six monthly installments, to be treated as a separate contract for each month, *held* that, as respects buyer's refusal to accept the first three installments, the breach existed as of the dates of such refusals, and not as of the date of buyer's definite repudiation of the whole contract, and damages should be assessed accordingly.

7. **Sales ⬄384(2)—Seller's rights on buyer's anticipatory breach stated.**

Though seller has a right to accept buyer's repudiation of the whole contract as an anticipatory breach, and compute his damages with respect to the market price at that time, seller is not obliged to do so, but may insist on performance, and tender monthly delivery, and compute damages according to the market price at time of such refusal.

8. **Sales ⬄384(2)—Measure of damages on buyer's refusal to accept monthly installments stated.**

Where buyer definitely refused to accept monthly installments of goods on or about the 6th of each of three successive months, under a contract calling for monthly installments, to be treated as separate contracts for each month, *held*, that the ordinary rule of measuring damages by the market price on the last day in which seller was entitled to make delivery was not applicable but damages should be computed as of the date of such refusals, and in the absence of evidence respecting market price at such dates, market price at the end of the preceding month should be used.

---

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On Rehearing.

9. **Sales ☞81(1)—Contract to be performed during particular month usually gives one party option to delay until last day of month.**

A sale contract calling for performance during a particular month does not necessarily entitle both parties, respectively, to refuse any performance until the last day of the month; but it usually gives an option of delay to one party or the other, and if the intent is doubtful the option may often be assigned on the principle of the first actor.

10. **Sales ☞81(5)—Under contract for monthly deliveries, buyer has no option to demand or refuse delivery before end of month.**

Under a contract for continuing sales with monthly deliveries, if the contrary intent does not appear, seller has the option to delay delivery until the end of the month; but there is no option in buyer to demand or refuse earlier deliveries, for an offer of delivery made at any time during the month is an offer of exact performance, and neither party has the right to change his mind after the first actor has, within the period, tendered performance, and it has been refused, or has repudiated the contract, and the other party has accepted the declaration as a breach.

In Error to District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action by the Sloss-Sheffield Steel & Iron Company against the Vogt Bros. Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed, on condition that plaintiff file certified copy of proceeding showing that judgment has been remitted; otherwise, reversed.

Allen P. Dodd, of Louisville, Ky. (Thos. A. Barker, of Louisville, Ky., on the brief), for plaintiff in error.

Leo T. Wolford, of Louisville, Ky. (Wm. Marshall Bullitt, of Louisville, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The Sloss-Sheffield Company, as manufacturing vendor, made a contract in October, 1919, with the Vogt Company, as purchaser, for the delivery to the latter of 200 tons of pig iron in equal monthly installments during the first six months of 1920. Within a few days, and during October, the purchaser expressed a wish to withdraw, and requested cancellation. The request was refused, and much correspondence followed. During the latter part of March, the purchaser's absolute refusal to accept the shipment, then or thereafter, was made clear. The Sloss-Sheffield Company brought this action in the court below, alleging that the contract was one of sale; that the January and February shipments had been postponed until March at the purchaser's request; that the purchaser then definitely refused the first three monthly shipments; that during each of the next three months plaintiff offered a proper monthly shipment but defendant refused to give shipping directions; that the market price at the end of March and at the end of each of the next three months was less than the contract price, by increasing amounts; and that the total of these differences made up the damages which plaintiff was entitled to recover. Defendant answered, to the effect that the contract was not one of sale, but of manufacture, and that it had absolutely counter-

manded in October, thus furnishing the date as of which damages should be fixed. After trial before a jury, each party requested an instructed verdict, and neither made any other request. The court then instructed a verdict, adopting the theories of contract and of damages set out in plaintiff's petition.

[1] The chief controversy between the parties was as to whether this was a contract of sale or of manufacture. If the former, the plaintiff was entitled to the instruction given (with minor exceptions to be noted). If the latter, plaintiff's recovery should stand upon the basis of lost profits; and, as there was no evidence on that subject, verdict for the defendant should have been instructed.

We are strongly inclined to classify this contract, on its face, as one of sale. The nomenclature and phraseology are, in all respects save one, those of a sale contract, since the clause which designates the iron to be sold as "Grade, Sloss" and fixes the chemical analysis, serves only to identify the property sold. The single exception is the clause which says:

"The seller shall not be responsible for delays caused by strikes, differences with workmen, accidents at the works, shortage of cars, delays in transportation, or other causes beyond its control."

This clause carries some color of manufacture, but it would not be at all inappropriate in an ordinary sales contract, where the vendor was expecting to buy its needs from manufacturers in that line. What seems to be probably the same form of contract was expressly held to be one of sale, and not of manufacture, in a careful opinion by the Circuit Court of Appeals in the Third Circuit (Kutztown Co. v. Sloss-Sheffield Co., 279 Fed. 627, 631), and we see no satisfactory reason to doubt the same conclusion as applied to our contract.

[2, 3] However, if there were doubt on that subject, that doubt would send us to the evidence for its solution. It appeared that the plaintiff was a very large manufacturer of pig iron, producing at the time the contract was made 1,500 tons per day, of various qualities and grades, and regularly producing, of the particular grade called for by this contract, some 150 tons per day. There would therefore, naturally, be no buying of materials or factory preparation and operation on account of this particular comparatively trifling contract, and the evidence is express that there was no such preparation. If there was any issue of fact involved, the conclusion of the court must be taken as a finding of fact that the contract was one of sale; and it is the familiar rule that, upon a joint request for an instructed verdict, any finding of fact inherent in the result reached must be sustained if there is any evidence to support it. Letta v. Cincinnati Co. (C. C. A. 6) 285 Fed. 707, 708.

[4, 5] The contract was expressly separable and independent as to each monthly delivery, and there remained many questions as to the right dates for fixing the market values to be used as standards of comparison. Defendant says that the cancellation was made a few days after the contract, and shows that the market price was then the same as the contract price. While there was testimony as to oral communications between the parties, it is not fairly to be inferred that there was

any intention on either side to say anything inconsistent with the contemporaneous letters. The written order of the vendee, in its final form, was accepted by the vendor on October 4. On October 11, the vendee wrote that it had suffered cancellation of its selling contracts, which it had expected to fill with this iron, and hence "we would be obliged to ask you that you cancel this contract." This letter was written to plaintiff's brokers, who acknowledged receipt of the "request for cancellation," and said that they had submitted it to the plaintiff. October 20 plaintiff wrote the defendant, declining to cancel, and "trusting that conditions may improve with your good company, and that you will have no difficulty in using the iron as contracted for." On October 23 defendant replied, stating the hardships of its situation and saying, "We trust, therefore, that you will reconsider your decision in the matter." Plaintiff replied that it could not consider cancellation, and insisted that it was just and right that the contract should be carried out. Then the matter was argued back and forth by continuous correspondence of the same nature, and not until the letters written in March did defendant make it clear beyond dispute that it considered the cancellation was absolute, and would not then or later accept any shipment against the order.

We do not think such correspondence should be construed as an absolute repudiation by the vendee until it takes its final form. Running through the letters was not only an effort on the part of each to persuade the other not to insist, but also an effort to agree upon the amount of damages which defendant would pay if plaintiff would grant the requested privilege of cancellation. A purchaser who, without any legal excuse, intends definitely and finally to repudiate a contract, must make that intention clear beyond doubt or confusion. We therefore must approve the action of the trial judge in adopting March as the time of the first absolute refusal to accept.

[6] We cannot, however, infer, as he did, that the vendee had requested the January and February deliveries to be postponed, and that therefore the breach as to the first three deliveries should be taken as of March. We think there was no basis for a finding of intention to ask any delayed deliveries. The negotiations were upon the subject of an entire cancellation, and, when these negotiations failed, they had no remaining effect; but the three monthly breaches existed as if there had been no delay in deciding whether to waive them and adopt a new basis. The result is that the damages for these three months should have been computed as of each month separately, instead of figuring all as of March. This would make a difference of about $250 in the result. The parties can probably agree upon an exact computation.

[7] When this definite renouncement was made in March, plaintiff doubtless had the right to accept that as an anticipatory breach, and compute its damages with reference to the market prices at that time; but plaintiff was under no obligation to do so. It had the right to do as it did, refuse to accept renunciation, and insist that the contract be carried out, tender monthly delivery each month, and compute damages according to the measure of the market price at each monthly refusal. Roehm v. Horst, 178 U. S. 1, 11, 20 Sup. Ct. 780, 44 L. Ed. 953.

[8] The market price at the end of each month was proved, and was used as the basis of computation for the deliveries of each month. There was no evidence as to the market price at any intermediate dates. As to the last three months, we think that defendant was entitled to use the market price as of the earlier period in each month, when there was an actual tender and an actual refusal of the delivery for that month, and that, under those circumstances, the ordinary rule of adopting the market price on the last day when the vendor was entitled to make delivery, would not apply. The evidence shows such definite tender and refusal on or about the 6th days of April, May, and June, respectively. Hence it seems that the market price at the end of the preceding month is more likely to be the true measure than is that price at the end of the current month. Certainly the vendee, defaulting upon a steadily declining market, cannot complain if the earlier date and smaller amount are adopted, and a remitting of those damages which came from adopting the later rather than the earlier date will cure any error which resulted from not taking the intermediate and correct date. This difference seems to be about $158; here also an exact computation can probably be agreed upon.

The judgment will be affirmed, upon condition that within 30 days, or such further time as the District Court may allow, the plaintiff file a certified copy of proceedings below, showing that the judgment has been duly remitted to the extent of the two items of about $250 and $158, above mentioned; otherwise, it will be reversed. In either event, the plaintiff in error will recover his costs of this court.

## On Rehearing.

PER CURIAM. Upon application for rehearing, defendant in error challenges the rule of damages adopted by the opinion as to the April, May, and June deliveries, and insists that the last day of each month should have been adopted as the critical date. This insistence is based on Avery v. Bowden, 5 Ellis & Blackburn, 714. We find nothing in this case, or in the principles there established, inconsistent with the result reached in the opinion. That case announces only the now undisputed rule that an anticipatory breach by one party does not terminate the contract, unless the other party accepts. If the seller, before the agreed time of delivery, declares a repudiation of his obligation, the buyer may accept the tendered breach, and a right of action then completely accrues to the buyer; but if the buyer refuses to join in abandoning further performance, and continues until the end of the specified time to insist upon delivery, his right of action accrues only upon the final breach.[1] It naturally follows that, in the meantime, the seller may change his mind and withdraw his tendered repudiation.

[1] Our recent holding in Baird Co. v. Bates, 296 Fed. 289 (March 14, 1924), is not inconsistent with this rule, but only marks an exception to its generality. In case of the bankruptcy of the buyer, who has agreed to accept future deliveries, the law declares his repudiation (contingently) as of the day of filing the petition. If the seller elects to treat this as an anticipatory breach, giving him a provable claim in bankruptcy, the law arbitrarily attributes that election to the same earlier day. This is from the necessity of the case, else the seller could have no provable claim.

This was precisely the situation in Avery v. Bowden. Defendant had agreed to load the plaintiff's ship at Odessa within the period from March 11 to April 25. Before April 1 plaintiff's captain demanded cargo, and defendant's agent announced his refusal to furnish cargo, then or later, thus tendering a complete anticipatory breach. Plaintiff's captain declined to acquiesce in this refusal, but continued to insist upon his cargo until after April 1. Plainly, therefore, on April 1 plaintiff had no completed right of action and on that date war was declared, thereby excusing defendant from performance. The case does not hold that if defendant had offered to load the ship, and if the captain had refused, and the defendant had accepted this refusal as ending his duty to perform further, the captain could later, and within the original time, have changed his mind and demanded cargo; but this is the effect which counsel now claim for it.

[9, 10] A sale contract calling for execution, not at a definite time, but during a future particular month, does not thereby necessarily entitle both parties, respectively, to refuse any performance until the last day of the month. It usually, if not always, gives an option of delay to one party or the other. If the intent is otherwise doubtful, this option may often be assigned upon the principle of the first actor. Wheeler v. New Brunswick R. R., 115 U. S. 29, 38, 5 Sup. Ct. 1061, 29 L. Ed. 341; Crystal Co. v. Robertson (C. C. A. 6) 289 Fed. 15, 17. In a contract for continuing sales with monthly deliveries, and if no other intent sufficiently appears, the seller has the option to delay his delivery until the end of the month (Dingley v. Oler, 117 U. S. 490, 500, 501, 6 Sup. Ct. 850, 29 L. Ed. 984); but there is no option in the buyer to demand or refuse earlier deliveries, for an offer of delivery made at any time during the month is an offer of exact performance. In some cases matter preliminary to shipment may make the buyer the first actor, and so entitle him, by refusing to perform, to tender an anticipatory breach which becomes closed by acceptance. We find neither principle nor authority which, in a contract for monthly deliveries, would give either party the right to change his mind and decide differently after the first actor has, within the period, tendered performance of his obligation and it has been refused, or has declared repudiation and the other party has accepted the declaration as a breach. There is no reason why the breach contingent and expectant may not be by the joint action of the parties precipitated into the breach definite and complete. The cases holding that delivery may be made at any time during the month are all, we think, cases where the seller's option to delay until the last day, or any option which the buyer might have had to wait until the last day, had not been exhausted by their earlier joint action during the month. In the Kutztown Case, supra, all the cases cited on page 629 are actions against the seller, and in the case itself the point now under consideration was not raised or decided.

The rehearing application is denied.