HUBBARD AUTO CENTER, INC. Plaintiff,

v.

GENERAL MOTORS CORPORATION Defendant.

No. 4:05 CV 0041 AS APR.

United States District Court, N.D. Indiana, Hammond Division.

March 31, 2006.

John R. Gambs, Taylor S. Flanery, Lafayette, Robert C. Byerts, Tallahassee, FL, Anthony E. Dowell, Lafayette, Charles C. Valauskas, Michael H. Baniak, Christopher E. Haigh, Chicago, IL, for Plaintiff/Petitioner.

Joseph M. Russell, Mark S. Little, Michael A. Duffy, Chicago, IL, John D. La-Due, South Bend, IN, Craig E. Pinkus, Paul D. Vink, Indianapolis, IN, Eric H. Burns, Lafayette, IN, Paul D. Vink, Indianapolis, IN, Roger W. Bennett, Lafayette, IN, for Defendant/Respondent.

## MEMORANDUM, ORDER & OPINION

ALLEN SHARP, District Judge.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant General Motors Corporation ("GM") has filed a motion to dismiss the Complaint of Plaintiff Hubbard Auto Center, Inc. ("Hubbard"). Hubbard filed a four-count Complaint alleging: (1) violation of Indiana franchise statutes; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; and (4) unjust enrichment. The Court heard oral arguments on this motion in Lafayette, Indiana on January 20, 2006. The parties have fully briefed the issues. For the reasons outlined below, GM's motion is **GRANTED** in part and **DENIED** in part.

### I. Background

Hubbard Auto Center, Inc., is a car dealership in Monticello, Indiana. Hubbard sells GM products, and one of the product lines carried by Hubbard is Oldsmobile. Hubbard and GM entered into a Sales and Service agreement as of November 1, 2000, which was set to expire on October 31, 2005. On December 12, 2000, GM announced that the Oldsmobile line would be phased out throughout the United States. On October 24, 2004, GM issued a letter advising all Oldsmobile dealers of "General Motors' intent not to renew the Oldsmobile Dealer Sales and Service Agreement currently in effect between Oldsmobile dealers and General Motors upon its expiration on October 31, 2005." Defendant's Memorandum in Support, Exhibit 3.[1]

On December 14, 2000, GM announced its "Transition Financial Assistance Program" ("TFAP") for Oldsmobile dealers. That program offered monetary compensation for the loss of the Oldsmobile franchise. Hubbard did not enter into an agreement with GM under the TFAP.

### II. Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the Complaint sets forth no viable cause of action upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); *Challenger v. Ironworkers Local No. 1*, 619 F.2d 645, 649 (7th Cir.1980). In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded factual allegations in the complaint as true, and draws all reasonable inferences in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–78 (7th Cir.1999). The Court is not required to accept the plaintiff's legal conclusions. *Fries v. Helsper*, 146 F.3d 452, 456 (7th Cir.1998), *cert. denied* 525 U.S. 930, 119 S.Ct. 337, 142 L.Ed.2d 278 (1998). Dismissal of a complaint is appropriate "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir.2005) (internal citations omitted).

### III. Discussion

As outlined above, Hubbard's Complaint includes four separate counts: violations of

---

1. This letter is considered part of the pleadings and may be properly considered when ruling on a Rule 12(b)(6) motion to dismiss because it is attached to Defendant's motion, is referenced in Hubbard's Complaint (e.g., ¶ 7), and it is central to Hubbard's claim. *See Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

Indiana's franchise statutes (Count I); breach of contract claims (Count II); breach of implied covenant of good faith and fair dealing (Count III); and unjust enrichment (Count IV). Each of these counts will be discussed in turn.

### A. Indiana Franchise Statutes

Hubbard contends that GM violated Indiana Code § 23–2–2.7–1(7) and (8) by terminating Hubbard's Oldsmobile franchise without good cause or in bad faith. Complaint ¶ 32(b). Hubbard also contends that GM violated Indiana Code § 23–2–2.7–2(1)(iv) by attempting to require Hubbard to accept GM's TFAP offer. Complaint ¶ 32(d). Hubbard further contends that GM violated Indiana Code § 23–2.7–2(2) by refusing and failing to deliver an adequate supply of vehicles. Complaint ¶ 32(e).

■ Indiana Code § 23–2–2.7–1(7) and (8) prohibits unilateral termination of a franchise without good cause or in bad faith. GM argues that "good cause" exists for the non-renewal, and that a determination of good cause can be made in this case as a matter of law. GM cites the Indiana Supreme Court's decision in *Continental Basketball Ass'n, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 139 (Ind. 1996), which held "that a determination of good cause could, in appropriate circumstances be made as a matter of law." The circumstances are not appropriate at this stage of the proceedings, however. The Court cannot determine from the pleadings alone that the "good cause" requirement has been satisfied as a matter of law. Therefore, GM's motion to dismiss must be denied as it relates to Hubbard's claims under IND. CODE § 23–2–2.7–1(7) and (8).

Indiana Code § 23–2–2.7–2(1)(iv) prohibits a franchisor from coercing the franchisee to "enter into any agreement with the franchisor . . . or do any other act prejudicial to the franchisee, by threatening to cancel or fail to renew any agreement between the franchisee and the franchisor." GM correctly notes that Hubbard only alleges that GM "threatened" to withdraw benefits under the TFAP, not any preexisting agreement between GM and Hubbard. Because renewal of the Oldsmobile dealer agreements was not contingent on participation in the TFAP program, Hubbard's claim as it relates to Indiana Code § 23–2–2.7–2(1)(iv) must be dismissed.

■ Indiana Code § 23–2.7–2(2) prohibits a franchisor from "[r]efusing or failing to deliver in reasonable quantities and within a reasonable time after receipt of an order from a franchisee for any goods, supplies, inventories, or services which the franchisor has agreed to supply to the franchisee." GM correctly notes that Hubbard does not allege that it sent any orders to GM for "reasonable quantities" of motor vehicles. The plain language of the statute clearly requires GM's receipt of those orders before any violation can occur. Therefore, Hubbard's claim as it relates to Indiana Code § 23–2.7–2(2) must be dismissed.

### B. Breach of Contract

#### 1. Choice of Law

■ Before directly addressing the breach of contract claims, the Court must first determine whether Michigan or Indiana law governs those claims. Hubbard argues that its contract claims "are governed by the terms and provisions of Indiana law." Complaint ¶ 26; Memorandum at 8–11. More specifically, Hubbard argues that the choice-of-law provision contained in the contract[2] does not "gov-

---

**2.** The Agreement states:

This Agreement is governed by the laws of

ern any and all relations, conduct or disputes between the parties," but instead "only extends to the employment of the rules of contract construction under Michigan law." Memorandum in Opposition at 10.

Hubbard relies on the Seventh Circuit case of *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132–133 (7th Cir. 1990), in support of its choice-of-law arguments. In that case, the court found that application of Indiana law was appropriate, rather than application of the law of the state chosen in the contract. *Id.* Notably, however, the court found the contract in question "unlawful" insofar as it "require[d] the franchisee to enter into an agreement 'limiting litigation brought for breach of the agreement in any manner whatsoever'" and because it required the franchisee to assent to a waiver "reliev[ing] any person from liability to be imposed" by Indiana statute. *Id.* at 134 (internal citations omitted).

In this case, however, there are no such unlawful provisions. The contract does not allow the parties to contract out of the protection of Indiana's franchise law. As the court recognized in *Wright–Moore*, "parties may expressly choose the applicable law through a contract." *Id.* at 132. The parties have done that here, and Michigan law governs the contract claims.

### 2. Breach of Contract Claims

■ Hubbard alleges that the Oldsmobile phase-out violates the following requirements of the Dealer Agreement: (1) the obligation "to provide a reasonable quantity and variety of products ... through the [five] year term of the Agreement"; (2) the obligation "to permit each dealer the opportunity to achieve a reasonable return on investment if it fulfilled its obligations under the Agreement"; and (3) the obligation to "maintain the Sales and Service Agreement in full force and effect indefinitely unless terminated pursuant to the termination provisions of the Sales and Service Agreement or as allowable under Indiana law." Complaint ¶ 37. Hubbard also argues that Article 14.5 of the Agreement sets forth an exhaustive and exclusive list of dealer breaches that would justify termination. Complaint ¶ 38.

Hubbard argues that GM violated Article 6.1 of the Dealer Agreement by failing to distribute new motor vehicles among its dealers in a fair and equitable fashion. Hubbard also argues that GM violated Article 6.4.1 for failing to provide a sufficient mix of models. Complaint ¶ 37. The Court cannot find that Hubbard could prove no set of facts which would entitle it to relief as to this claim. Therefore, GM's motion as it relates to Articles 6.1 and 6.4.1 must be denied.

■ Hubbard also argues that GM breached the renewal provision of the Dealer Agreement. Complaint ¶ 37(4). That provision states that the "Dealer is assured of an opportunity to enter into an Agreement(s) at the expiration date" of the current agreement. Ex. 1, Term of Agreement(s). At the time Hubbard filed its Complaint, the Agreement had not yet expired. Therefore, any claim by Hubbard based on this provision is anticipatory. Under Michigan law, Hubbard may not elect to continue under the contract and maintain a claim for anticipatory breach of that contract. *See Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.,*

the State of Michigan. However, if performance under this Agreement is illegal under a valid law of any jurisdiction where such performance is to take place, performance will be modified to the minimum extent necessary to comply with such law if it was effective as of the effective date of this Agreement.

Ex. B, "Standard Provisions," § 17.12; *see* Complaint ¶ 10.

862 F.2d 597, 603 (6th Cir.1988); *Hettrick Mfg. Co. v. Waxahachie Cotton Mills,* 1 F.2d 913, 919 (6th Cir.1924); *Stoddard v. Manufacturers Nat'l Bank,* 234 Mich.App. 140, 593 N.W.2d 630, 640 (1999). Therefore, GM's motion as it relates to the Term of Agreement(s) Provision is granted. The same reasoning applies to any claim Hubbard may bring under Article 14.5. Therefore, GM's motion to dismiss is granted as it relates to Article 14.5.

■ Hubbard contends that GM violated Article 4.1 of the Dealer Agreement by failing "to permit each dealer the opportunity to achieve a reasonable return on investment . . . ." Complaint ¶ 37(2). GM argues that this provision actually places a contractual obligation on Hubbard, and not GM. But this is a motion to dismiss under Rule 12(b)(6), and this Court must draw all reasonable inferences in favor of Hubbard at this stage of the proceedings. Hubbard's claim will not be dismissed based on conflicting interpretations of the parties' contract. *See Davis v. Kramer Bros. Freight Lines, Inc.,* 361 Mich. 371, 105 N.W.2d 29, 32 (1960). Therefore, GM's motion as it applies to Article 4.1 is denied.

### C. Implied Covenant of Good Faith and Fair Dealing

Hubbard contends that GM breached its implied covenant of good faith and fair dealing by: (1) failing to distribute motor vehicles in a fair and equitable manner; (2) failing to comply with the renewal terms of the Dealer Agreement; (3) failing to comply with the termination provisions of the Dealer Agreement; (4) failing to permit the opportunity to receive a reasonable return on investment; and (5) failing to apply TFAP in a fair and equitable manner. Complaint ¶ 44.

[7] Hubbard claims that Michigan law does not recognize a claim for breach of an implied covenant of good faith and fair dealing under any circumstances. A re-

view of recent case law demonstrates that this is not the case.

In *Harte–Hanks Direct Market v. Varilease Technology,* 299 F.Supp.2d 505, 517 (D.Md.2004), the district court applied Michigan law to a claim for breach of the implied duty of good faith and fair dealing. While noting that Michigan law does not ordinarily recognize an independent cause of action for breach of the implied duty of good faith and fair dealing, the court also stated that the duty is recognized "when one party to a contract has made its own performance a matter of its own discretion." *Id.* at 518 (citing *Stephenson v. Allstate Ins. Co.,* 141 F.Supp.2d 784, 790 (E.D.Mich.2001)); *see also Hubbard Chevrolet Co. v. General Motors Corp.,* 873 F.2d 873, 878 (5th Cir.1989); *Ferrell v. Vic Tanny,* 137 Mich.App. 238, 357 N.W.2d 669, 672 (1984); *Burkhardt v. City Nat'l Bank,* 57 Mich.App. 649, 226 N.W.2d 678, 680 (1975).

Similarly, in *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 334 (3d Cir.2001), the Third Circuit applied Michigan law and rejected an argument that Michigan law does not recognize an independent action for breach of an implied covenant of good faith. The court stated that "cases like *Hubbard* and *Burkhardt* make clear that, under Michigan law, such an implied obligation can arise when, for instance, the specific contractual terms make a party's performance under the contract entirely discretionary." *Id.* at 334 n. 23.

[8] In this case, Hubbard has alleged that the GM breach its duty in exercising its discretion in performance of the Sales and Service Agreement. Therefore, dismissal at this stage of the proceedings would be premature. GM's motion is denied as to Count III.

## D. Unjust Enrichment

 Hubbard contends that GM has been unjustly enriched by Hubbard's investment of time and effort to improve GM's image and generate goodwill in GM. Complaint ¶ 49. To state a claim for unjust enrichment a plaintiff must allege: (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Barber v. SMH (US), Inc.*, 202 Mich.App. 366, 509 N.W.2d 791, 796 (1993). It is well-settled, however, that "a contract will be implied only if there is no express contract covering the same subject matter." *Id.* (citing *Martin v. East Lansing School Dist.*, 193 Mich.App. 166, 483 N.W.2d 656, 661 (1992)).

Hubbard argues that it is entitled to plead unjust enrichment as an alternative theory to breach of contract. But this can only be done in certain circumstances not applicable to Hubbard. In *H.J. Tucker and Assocs., Inc. v. Allied Chucker and Engineering Co.*, 234 Mich.App. 550, 595 N.W.2d 176, 188 (1999) for example, the court recognized circumstances where the two claims could be pled in the alternative: (1) where the parties' express contract "was no longer in force"; (2) where the "express agreement covered certain subjects . . . but did not cover other subjects" or (3) where "there was no contract between the parties." *Id.*

 The first and third circumstances are clearly not applicable in this case. Hubbard's Complaint alleges that a contract—the Sales and Service Agreement— was made between the parties and was in force at the time suit was filed. Complaint ¶ 10 ("Plaintiff is presently under a renewed contract (Sales and Service Agreement) with GM as a dealer of GM products."). So Hubbard's claim must rest on the allegation that the express contract does not cover "other subjects." But the "Sole Agreement" clause of that contract forecloses the possibility of additional agreements between the parties affecting or relating to the subject matter of the Agreement, and demonstrates that Hubbard was not required to do anything more than what was provided for in the contract. Ex. B, "Standard Provisions," § 17.11 Ex. 1 Hubbard's unjust enrichment claim fails as a matter of law and must be dismissed. GM's motion is granted as to Count IV.

## IV. Conclusion

### A. Count I

GM's motion to dismiss is **DENIED** as it relates to Hubbard's claims under Indiana Code § 23–2–2.7–1(7) and (8). GM's motion to dismiss as it relates to Hubbard's claim under Indiana Code § 23–2–2.7–2(1)(iv) is **GRANTED**, and Hubbard's claim under Indiana Code § 23–2–2.7–2(1)(iv) is **DISMISSED**. GM's motion to dismiss as it relates to Indiana Code § 23–2.7–2(2) is **GRANTED**, and Hubbard's claim under Indiana Code § 23–2.7–2(2) is **DISMISSED**. All dismissed claims under this count are dismissed **without prejudice**. Hubbard may amend its claim under Count I no later than ten (10) days after issuance of this order.

### B. Count II

GM's motion to dismiss as it relates to Articles 6.1 and 6.4.1 is **DENIED**. GM's motion to dismiss as it relates to the Term of Agreement(s) Provision is **GRANTED**, and Hubbard's breach of contract claim based on the Term of Agreement(s) Provision is **DISMISSED**. GM's motion to dismiss as it relates to Article 14.5 is **GRANTED**, and Hubbard's claim as it relates to Article 14.5 is **DISMISSED**. GM's motion to dismiss as it relates to Article 4.1 is **DENIED**. All dismissed claims under this count are dismissed **without prejudice**. Hubbard may amend

its claim under Count II no later than ten (10) days after issuance of this order.

### C. Count III

GM's motion to dismiss is **DENIED** as it relates to Count III.

### D. Count IV

GM's motion to dismiss is *GRANTED* as it relates to Count IV, and Count IV is **DISMISSED**.

**IT IS SO ORDERED.**